STATE of Tennessee, Appellee,

v.

Tony GENNOE, Appellant.

Court of Criminal Appeals of Tennessee, at Knoxville.

July 16, 1992.

Permission to Appeal Denied by Supreme Court Nov. 30, 1992.

Conrad Finnell, Atty., Cleveland, for appellant.

Charles W. Burson, Atty. Gen. and Reporter, Rose Mary Drake, Sp. Asst. Atty. Gen., Nashville, Jerry N. Estes, Dist. Atty. Gen., Tenth Judicial Dist., Athens, for State.

## OPINION

WADE, Judge.

The defendant, Tony Gennoe, and his codefendant, Randy Knox, were tried for aggravated rape and aggravated kidnapping. The jury received instructions on the lesser offense of sexual battery. Each was found guilty of facilitation of sexual battery, a Class A misdemeanor. The defendant was sentenced to 11 months and 29 days in the county jail. No fine was imposed.

Two issues have been presented for review:

(1) whether the jury's failure to convict Knox of sexual battery barred the defendant's conviction for facilitation of sexual battery; and

(2) whether the trial court erred by denying probation.

We affirm.

The proof presented a classic jury question. The victim, a student at Tennessee Wesleyan College, made plans to celebrate her twentieth birthday. She was to meet her roommate and a few other friends at Mark Gibson's apartment at midnight. During the course of the evening, the victim drank a few beers with another friend, Melody Barker, and went to a night club. Barker then dropped her off at Gibson's apartment at approximately 11:45 P.M. No

one was there. After waiting for several minutes, the victim decided to walk the half-mile distance to her dorm.

The victim testified that she had walked about a quarter of a mile when the defendant stopped his vehicle and asked if she wanted a ride. When she declined, Knox, the passenger, opened the door and pulled her into his lap. She crawled through the bucket seats to the back.

The victim testified that the defendant drove out into the country and eventually asked her to have sex. Knox and the defendant then got into the back seat and tried to kiss the victim. The victim resisted by biting, kicking, and fighting. As Knox held the victim's hands, the defendant pulled down the victim's pants and digitally penetrated her vagina. The victim continued to resist then tried to break the car window with her heel. Both men got out of the vehicle. When the victim tried to get away, the men forcibly returned her to the car. Eventually, the defendant decided to "let this bitch out." She ran to a motel office, got help, and was taken to the Athens Hospital emergency room.

The physician described the defendant as hysterical. She had scratches on her fingers and wrists and fresh bruises on her cheek and knee. The victim's vaginal area was tender, consistent with having been digitally penetrated.

The defense theory was that the victim, drinking and disappointed when her friends failed to show for her birthday celebration, asked for the ride. That the defendant and Knox, handsome men in their late twenties, willingly permitted her to join them as they drank beer and drove about the Athens area. The victim, overweight and unattractive, made sexual overtures to the defendant and that there was consensual fondling between the two until it appeared that the defendant wanted Knox to share in the activity. The defense theorized that the victim was later embarrassed by her actions and needed to make the complaint to excuse her late return to the dormitory.

The defendant testified that the victim stuck out her thumb for a ride as she was walking to her dormitory. He stated that when he stopped to offer a ride, the victim got in the car. She had a beer under her jacket, talked about playing soccer, and told of a nightclub in Knoxville. The defendant related that he eventually drove to a place called Well's Hollow. Knox walked away from the car and the victim initiated the encounter by kissing the defendant and rubbing his private parts.

Knox quickly returned to the car saying that he had seen several men with guns. They all left and found another place to park. Knox again walked away. The defendant stated that he and the victim began to kiss. He said that the victim then got out of the car, pulled her pants down, and urinated on the ground. The two got into the back seat. When Knox returned, the defendant said, "Hey, this girl is hot. She will probably take both of us on." When Knox began to rub the victim's breasts, she said, "Hell no, not both of you." The defendant stated that the victim reacted angrily, got out of the car, but did not try to leave. When the defendant told her he would not let her walk, she got back into his car voluntarily. When they reached a motel, the victim threatened to report the incident to the police, kicked the backseat, and told them to let her out. The defendant admitted that he had inserted his finger into the victim's vagina, and admitted lying in his initial statement to police because he did not want his wife to find out.

Randy Knox, the co-defendant, verified the defendant's account of the incident. He stated that the encounter was consensual and the victim had no reason to be afraid.

I

█ The defendant initially contends that he cannot be convicted of facilitation of sexual battery without another being convicted as the principal in the crime. This argument is predicated upon the old common law principle that aiders, abettors, and accessories cannot be tried absent the conviction of the principal. During the 19th century, however, this state enacted legislation permitting the prosecution and conviction of the aider and abettor whether

the principal had been convicted or not. Tenn.Code Ann. § 39-1-304 (now repealed).

This offense took place after the passage of the Criminal Sentencing Reform Act of 1989. The defendant acknowledges the existence of the following statute:

In a prosecution in which a person's criminal responsibility is based upon the conduct of another, the person may be convicted on proof of commission of the offense and that the person was a party to or facilitated its commission, and *it is no defense that ... [t]he person for whose conduct the defendant is criminally responsible* has been acquitted, has not been prosecuted or convicted, has been convicted of a different offense or different type or class of offense, or is immune from prosecution.

Tenn.Code Ann. § 39-11-407 (Supp.1989) (emphasis added).

The defendant, convicted of a Class A misdemeanor because it is "next below the felony facilitated (sexual battery) by the person so charged," complains that an exception should be created in order to eliminate "grossly inconsistent verdicts." *See* Tenn.Code Ann. § 39-11-403; Tenn.Code Ann. § 39-13-505. He reasons that the terms of Tenn.Code Ann. § 39-11-407 should not apply when the principal and the aider and abettor are tried at the same time. To hold otherwise would be so fundamentally unfair as to deprive the defendant of his constitutional rights to due process and equal protection.

We cannot agree. In *Wiggins v. State,* 498 S.W.2d 92 (Tenn.1973), our Supreme Court adopted the rationale of *Dunn v. United States,* 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932). Our Supreme Court held as follows:

Consistency in verdicts for multiple count indictments is unnecessary as each count is a separate indictment. Therein lies the essential reasoning. An acquittal on one count cannot be considered res judicata to another count even though both counts stem from the same criminal transaction. This Court will not upset a seemingly inconsistent verdict by speculating as to the jury's reasoning if we

are satisfied that the evidence establishes guilt of the offense upon which the conviction was returned.

*Id.* at 93-94.

The Sentencing Commission Comments to Tenn.Code Ann. § 39-11-407 set out the underlying policy for the offense of facilitation:

This section reflects a policy determination that, in a case involving multiple offenders, a conviction should be sustained where there is sufficient evidence to support it, regardless of whether there is a failure of proof in another case involving other people. Thus, the defendant may be convicted whether the other parties to the offense are convicted, acquitted, or incapable of criminal responsibility.

Other authorities have acknowledged the inherency of seemingly inconsistent verdicts in criminal trials. The presence of such verdicts in our system "appear to be a lesser evil than granting immunity to the accomplice...." Model Penal Code, § 2.04 Comment (7) (tentative draft number one) (1953). The greater goal is that each participant in a crime would be tried independently acknowledging the role of the jury as the ultimate fact-finder.

We find no basis to carve out an exception to the facilitation statute based upon constitutional principles. Inconsistent jury verdicts are not fatal to a conviction. *United States v. Sandy,* 605 F.2d 210 (6th Cir.); (*cert. denied Friedlander v. United States,* 444 U.S. 984, 100 S.Ct. 490, 62 L.Ed.2d 412 (1979)).

## II

The defendant also argues that the trial court erred by denying the defendant his request for probation. The state argues against the grant on the basis that the jury verdict was "baffling in its leniency." The state cites the nature of the offense, the lack of remorse on the part of the defendant, and the luck of the verdict as proper foundations for probation denial.

■ When a challenge is made to the length, range, or manner of service of a

sentence, it is the duty of this court to conduct a "de novo review ... with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn.Code Ann. § 40–35–401(d). Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40–35–102, –103, and –210.

█ Among the factors applicable to the defendant's application for probation are the circumstances of the offense, the defendant's criminal record, social history, and present condition, and the deterrent effect upon and best interest of the defendant and the public. *State v. Grear*, 568 S.W.2d 285 (Tenn.1978).

Misdemeanor sentencing must be consistent with the purposes and principles of the Criminal Sentencing Reform Act of 1989. Tenn.Code Ann. § 40–35–302(b). Even if no separate sentencing hearing takes place, the defendant is entitled to a reasonable hearing upon the length of the misdemeanor sentence. Tenn.Code Ann. § 40–35–302(a). If the court does not fix a percentage of the misdemeanor sentence, as was the case here, the defendant is immediately eligible "for work release, furlough, trusty status and related rehabilitative programs." Tenn.Code Ann. § 40–35–302(d). In determining the actual period of confinement, the enhancement and mitigating factors may, in addition to the purposes and principles of the sentencing, be considered. Probation may be immediate or after service of a part of the sentence. Tenn.Code Ann. § 40–35–302(e)(1) and (2). Because especially mitigated or standard offenders convicted of Class C, D, or E felonies are presumed to be favorable candidates for alternative sentencing, the same presumption would logically apply to misdemeanors. *See* Tenn.Code Ann. § 40–35–102(6). The

ultimate burden for establishing an entitlement to probation, however, remains upon the applicant. *See* Tenn.Code Ann. § 40–35–303(b).

The defendant, 28 years of age, has been married for 12 years and has three children. He had no prior felony record and was gainfully employed at the time the sentence was imposed. At sentencing, the defendant had served approximately one month in jail. Knox, his co-defendant, had apparently served 96 days.

█ The circumstances of an offense may be an appropriate factor for the denial of probation. *State v. Wiseman*, 643 S.W.2d 354 (Tenn.Crim.App.1982). If the crime involves violence, that may be a factor militating against probation. *State v. Poe*, 614 S.W.2d 403 (Tenn.Crim.App.1981). A breach of trust may be a basis for denial. *Woodson v. State*, 608 S.W.2d 591 (Tenn. Cr.App.1980). Either untruthfulness or lack of candor may also be an appropriate consideration. *State v. Bunch*, 646 S.W.2d 158 (Tenn.1983).

█ The nature and circumstances of the offense, at least as perceived by the trial judge, were unfavorable. A facilitation of sexual battery may involve a degree of violence. The victim had minor injuries as a result of the encounter; some force appears to have been present. If the defendant offered and the victim accepted the ride, a relationship of trust, reasonable or not, necessarily followed. To have facilitated a sexual battery under that circumstance would have breached a duty incident to that trust. Although there are factors weighing favorably toward the grant of probation, the presumption of correctness afforded the trial court prevails here. In our view, the grant of immediate probation was properly denied.

Accordingly, the judgment is affirmed.

DWYER and PEAY, JJ., concur.